# IN THE UNITED STATES DISTRICT COURT OF
## THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| **James BARNES and Philip WHITEHEAD, Individually and on Behalf of All Others Similarly Situated** )<br><br>)<br>)<br>)<br> | |
| **Plaintiffs,** ) | |
| ) | **Case No. 13-cv-6243** |
| **v.** ) | |
| ) | |
| **AIR LINE PILOTS ASSOCIATION, INTERNATIONAL,** )<br>) | |
| ) | |
| **Defendant.** ) | |

## MOTION FOR CLASS CERTIFICATION

On behalf of themselves and a class of similarly situated persons (the "Class," as defined below), plaintiffs James Barnes and Philip Whitehead, (collectively, "Plaintiffs"), respectfully request entry of an order (i) entering and reserving ruling on their Motion for Class Certification; (ii) allowing for and scheduling discovery to take place on class-wide issues; (iii) granting them leave to file a supplemental memorandum in support of their Motion for Class Certification upon the conclusion of class-wide discovery; (iv) granting their Motion for Class Certification after full briefing of the issues presented herein; and, (v) providing all other and further relief that the Court deems equitable and just.[1]   In support of their Motion, Plaintiffs state as follows.

---

1 Plaintiffs file this motion at the outset of the litigation to prevent Defendant from attempting a so-called "buy off" to moot their representative claims (*i.e.*, tendering them the full amount of their individual damages alleged in the Complaint). *See, Damasco v. Clearwire Corp.*, 662 F.3d 891, 896 (7th Cir. 2011) ("Class-action plaintiffs can move to certify the class at the same time that they file their complaint. The pendency of that motion protects a putative class from attempts to buy off the named plaintiffs . . . If the parties have yet to fully develop the facts needed for certification, then they can also ask the district court to delay its ruling to provide time for additional discovery or investigation.").

## FACTUAL ALLEGATIONS

For nine years, United Airlines' pilots worked under the collective bargaining agreement negotiated for them by ALPA in 2003. Although that agreement's term ended on the first day of 2010, the Railway Labor Act (the "Act") required the pilots to continue working as if that agreement were still in force until a new contract could be negotiated and put in place. Negotiation began in 2010 and lasted nearly three years.

In the interim, United Airlines merged with Continental Airlines to form United Continental Holdings ("United"). However, for the merged company's internal purposes and for all purposes relevant herein, the pilots of the two airlines have, to date, remained separate groups (referred to hereinafter as the "United Pilots" and the "Continental Pilots," respectively). The Continental Pilots had also been working under a lapsed contract for several years. Finally, at the end of 2012, ALPA and United agreed on a new contract for both groups of pilots (the "2012 United Pilot Agreement" or the "2012 UPA").

As a final part of the negotiations, at the insistence of both groups of pilots generally, ALPA demanded that the 2012 UPA include retroactive – or "retro" – pay to compensate the pilots for what they had lost by operation of the delay in reaching the new agreement, during which time their salaries had been effectively frozen. Indeed, the United Pilots had worked during those years with the understanding from ALPA that the union was negotiating for them, not only a new contract, but also the back pay necessary to put each of them in the financial position he or she would have occupied had the new contract (i.e., the 2012 UPA) been consummated on January 1, 2010. This goal was commonly referred to during negotiations as "100% retro pay" for all of ALPA's United Pilots.

United agreed to pay $400 million to settle ALPA's demand for retro pay and so to finalize the 2012 United Pilot Agreement. ALPA accepted the $400 million in order to provide as much of "100% retro pay" as possible to both groups of pilots. An intra-union arbitration divided the money between the two groups of pilots: $225 million for the United Pilots and $175 million for the Continental Pilots. While the $225 million was far less than was needed to provide the some 6,000 United Pilots with "100% retro pay," the union was thus nonetheless duty bound by the basis upon which it sought and accepted the money to apportion that settlement amount according to each pilot's pro rata share.

Instead, however, ALPA acted arbitrarily and discriminatorily with regard to Plaintiffs and the members of their Class. In the partial payments of the retro pay that ALPA has made to date, it has irrationally departed from the distribution formula based upon the new pay rates in the 2012 UPA, manipulating it to the disadvantage of Plaintiffs' Class. ALPA has thus withheld from the members of the Class on average tens of thousands of dollars; ALPA has also announced its intention to make the further payments in accord with the same illegal scheme. ALPA's wrongful conduct has thus cost and threatened to further cost the Class, in the aggregate, several million dollars.

## A. Facts Pertaining to Plaintiffs

James Barnes and Philip Whitehead each worked as United pilots for more than 20 years. Had ALPA allocated the retro pay according to the basis upon which the union sought and accepted the money from United, each of them would have been entitled to several tens of thousands of dollars. Instead, ALPA has scheduled each to receive only a fraction of the amount to which he is properly entitled.

### B. Plaintiffs' Proposed Class

On information and belief, some 250 United pilots have similarly been deprived of some or all of their deserved retro pay. In every case, these pilots were the victims of ALPA's discriminatory and arbitrary behavior. Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure. They seek to represent a class persons comprising all individuals who worked as United Pilots during any part of the period from January 1, 2010 through December 18, 2012 (the "Retro Pay Period") and who received or have been designated to receive less retro pay than their pro rata share of the $225 million as determined by what they would have been paid had the 2012 United Pilot Agreement been in effect during the Retro Pay Period (the "Class").

### THE CLASS SATISFIES THE REQUIREMENTS FOR CERTIFICATION

Class certification is appropriate under Rule 23 when the proponent of certification demonstrates that each of the requirements of Rule 23(a) and at least one of the subsections under Rule 23(b) has been satisfied. Rule 23(a) requires that (i) the proposed class is so numerous that joinder of all individual class members is impracticable (numerosity); (ii) that there are common questions of law and fact amongst class members (commonality); (iii) that the proposed representative's claims are typical of those of the class (typicality); and (iv) that both the named-representatives and their counsel have and will continue to adequately represent the interests of the class (adequacy).

In this case, Plaintiffs seek certification of the proposed Class under Rule 23(b)(1), (b)(2) and (b)(3). To fulfill the requirements of Rule 23(b)(1), a plaintiff must demonstrate that "inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class" or that "adjudications

with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." In order to certify a class under Rule 23(b)(2), a plaintiff must show that the party opposing certification has acted or failed to act on grounds generally applicable to the class as a whole, "so that final injunctive relief or corresponding declaratory relief is appropriate . . . ." Finally, under Rule 23(b)(3) there must be (i) questions of law or fact common to the proposed class members, which predominate over any questions affecting only individual members, and (ii) the class mechanism must be superior to other available methods for fairly and efficiently adjudicating the controversy.

## A. The Numerosity Requirement Is Satisfied.

After investigation by Plaintiffs' counsel, Plaintiffs reasonably believe that the Class comprises in excess of 250 members. Rule 23(a)'s first requirement—numerosity—is satisfied where "the class is so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). However, there is no specific number required, nor are the plaintiffs required to state the exact number of potential class members. *Smith v. Nike Retail Servs., Inc.*, 234 F.R.D. 648, 659 (N.D. Ill. 2006). Generally, "[t]he court is permitted to make common-sense assumptions that support a finding of numerosity." *Maxwell v. Arrow Fin. Servs. LLC*, No. 03 C 1995, 2004 WL 719278, *2 (N.D. Ill. March 31, 2004); *see also* 3 ALBA CONTE & HERBERT B. NEWBERG, *Newberg on Class Actions* § 7.20, 66 (4th ed. 2001).

Here, Plaintiffs allege – and discovery will show – that Defendant perpetrated its illegal misdistribution of retro pay upon some 250 pilots. Classes numbering in the hundreds are routinely considered appropriate for certification. *See* ALBA CONTE & HERBERT

NEWBERG, *Newberg on Class Actions* § 3:5, 243-46 (4th ed. 2002). Accordingly, the proposed

Class satisfies the numerosity requirement.

### B. The Commonality Requirement Is Satisfied.

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." To

meet the commonality requirement, the named-representative is required to demonstrate that the

proposed class members "have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 131 S.

Ct. 2541, 2551 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). In

other words, commonality requires that the claims of the class "depend upon a common contention

. . . of such a nature that it is capable of classwide resolution—which means that determination of

its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one

stroke." *Id.* Commonality is present where a "common nucleus of operative fact" exists, even if

as to one question of law or fact. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). The

question of commonality is a relatively low and easily surmountable hurdle. *See Scholes v. Stone,

McGure, & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992).

The claims of Plaintiffs and the Class in this case are based upon the same common

contention: that ALPA misdistributed the retro pay irrationally, arbitrarily, and discriminatorily,

thus depriving Plaintiffs and their Class collectively of several millions of dollars. Moreover,

Defendant's unlawful conduct will be proved through the use of common and generalized

evidence applicable to the Class as a whole. Accordingly, the commonality requirement is met.

### C. Plaintiffs' Claims are Typical of the Class

Rule 23 next requires that Plaintiffs' claims are typical of those of the other Class

members. Fed. R. Civ. P. 23(a)(3). The typicality requirement is closely related to commonality

and is satisfied if Plaintiffs' claims arise from "the same event or practice or course of conduct that

gives rise to the claims of other class members and . . . are based on the same legal theory." *Radmanovich v. Combined Ins. Co. of Am.*, 216 F.R.D. 424, 432 (N.D. Ill. 2003) (internal quotation marks omitted). Nevertheless, the existence of factual differences will not preclude a finding of typicality; the claims of a named plaintiff need only share "the same essential characteristics" as those of the class. *Id.* Indeed, "'[s]imilarity of legal theory is more important than factual similarity. . . .'" *Id.* (quoting *Harris v. City of Chicago*, 1998 WL 59873, at \*5 (N.D. Ill. 1998)).

In this case, Plaintiffs and the proposed Class were each subjected to Defendant's common course of conduct. That is, they each were denied their fair share of retro pay as a result of ALPA's arbitrary manipulation of the distribution formula that had been the basis for the union's demand for and acceptance of the retro pay from United. Plaintiff and the other members of the Class suffered substantially the same harm in the form of the loss of significant amounts of money for which they had worked for some three years. As such, by pursuing their own claims, Plaintiffs will necessarily advance the interests of the proposed Class in satisfaction of Rule 23(a)(3)'s typicality requirement.

**D. The Adequacy of Representation Requirement is Satisfied.**

Finally, Rule 23(a) requires that the representative parties have and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This means that both proposed class representatives and their counsel have the ability to "zealously represent and advocate on behalf of the class as a whole." *Maxwell*, 2004 WL 719278, at \*5. The proposed class representative must not have claims that are "antagonistic or conflicting . . . with other members of the class," and must have a "sufficient interest in the outcome of the case to ensure vigorous advocacy." *Id.* (internal quotation marks omitted). Additionally, proposed class

7

counsel must be competent and have the resources necessary to sustain the complex litigation necessitated by class claims; it is persuasive evidence that proposed class counsel have been found adequate in prior cases.   *Gomez v. Ill. State Bd. of Educ.*, 117 F.R.D. 394, 401 (N.D. Ill. 1987).

Plaintiffs here have the same interests as the other members of the Class.   Therefore, like the other members of the Class, their interests lie in ensuring that Defendant ceases its wrongful conduct and compensate all members of the Class for its past wrongs.   Plaintiffs have no interests antagonistic to those of the other members of the Class.

Similarly, Plaintiffs' counsel comprises well-respected members of the legal community who have extensive experience in class actions of similar size, scope, and complexity to the instant action.   Moreover, they have engaged in major complex litigation involving the Defendant ALPA and conduct similar to that complained of in the instant matter.   Plaintiffs' lawyers have frequently been appointed lead class counsel by courts throughout the country.   Proposed class counsel have already diligently investigated the claims at issue in this action and dedicated substantial resources to the case, and will continue to do so throughout its pendency.

**E.   The Proposed Class Meets the Requirements of Rule 23(b)(1), (2), and (3).**

Once the prerequisites of Rule 23(a) have been satisfied, too must a plaintiff satisfy one of the three subsections of Rule 23(b).   Here, Plaintiffs seek certification of the proposed Class under Rules 23(b)(1), (b)(2), and (b)(3).

**i.      23(b)(1)(A)-(B) Is Satisfied.**

The requirements of Rule 23(b)(1)(A)-(B) are met here, because the retro pay constitutes a limited pool of money, and that which is given to one is necessarily denied to the others. Therefore, the prosecution of separate actions by individual Class members would: (A) create a risk of inconsistent or varying adjudications with respect to individual members of the Class and

8

establish incompatible standards of conduct for Defendant, and (B) create a risk of adjudications with respect to individual Class members that would, as a practical matter, be dispositive of the interests of the other members not parties to this adjudication and/or substantially impair their ability to protect these interests.

### ii.      23(b)(2) Is Satisfied.

Rule 23(b)(2) provides that the party opposing certification must have acted or failed to act on grounds generally applicable to the proposed class, "so that final injunctive relief or corresponding declaratory relief is appropriate. . . ." *Brown v. Yellow Transp., Inc.*, 2011 WL 1838741 at *2 (N.D. Ill. 2011) (quoting Fed. R. Civ. P. 23(b)(2)). The requirement that the defendant act on grounds generally applicable to the class, like the whole of Rule 23, is to be "liberally construed so as to favor the maintenance of class actions where appropriate." *Yellow Transp.*, 2011 WL 1838741, at *2; *see also, King v. Kansas City Southern Indus.*, 519 F.2d 20, 26 (7th Cir. 1975)). Where a court finds that Rule 23(a)'s commonality requirement is met, the courts have typically found that there is a sufficient showing that the defendant acted on grounds generally applicable to the class as a whole. *See Lemon v. Intl. Union of Operating Engineers, Loc. No. 139, AFL-CIO*, 216 F.3d 577, 580 (7th Cir. 2000); *YellowTransp.*, 2011 WL 183871, at *7.

Here, there can be no question that Defendant acted on grounds generally applicable to the Class as a whole. ALPA misdistributed and announced plans to further misdistribute retro pay among the United pilots, depriving the members of the Class of their fair share. Final injunctive relief is necessary to protect Plaintiff and the other members of the Class from such continuing conduct. Thus, the requirements of Rule 23(b)(2) are satisfied.

### iii. 23(b)(3) Is Satisfied.

Plaintiff also seeks class certification under Rule 23(b)(3), which provides that a class action may be maintained where the questions of law and fact common to members of the class predominate over any questions affecting only individual members, and the class action mechanism is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3); *Fletcher v. ZLB Behring LLC*, 245 F.R.D. 328, 331-32 (N.D. Ill. 2006). This case easily meets both requirements.

Rule 23(b)(3)'s "predominance requirement looks to whether the proposed class is 'sufficiently cohesive' to warrant 'adjudication' by representation.'" *Williams-Green v. J. Alexander's Restaurants, Inc.*, 277 F.R.D. 374, 383 (N.D. Ill. 2011) (citing *Wal–Mart Stores*, 131 S.Ct. at 2566). The inquiry requires courts to identify "the substantive issues that will control the outcome, assess[ ] which issues will predominate, and then determin[e] whether the issues are common to the class." *Id.* (citing *Hyderi v. Washington Mut. Bank, FA*, 235 F.R.D. 390, 398 (N.D. Ill. 2006)) (internal quotations omitted).

Here, the claims of Plaintiffs and the other members of the Class all arise from Defendant's standardized conduct of misdistributing the retro pay. Thus, the common questions described above in the discussion of the commonality requirement predominate over any issues affecting only individual Class members. *See Mansfield v. Air Line Pilots Ass'n Int'l*, 2007 WL 2048664 (N.D. Ill. 2007) (certifying under Rule 23(b)(3) a class of United pilots who would have received more under an allocation methodology not adopted by ALPA than what they received under the allocation methodology actually employed by ALPA in connection with the distribution of the proceeds of $550 Million in convertible notes to compensate pilots for the termination of their pension plan during United's bankruptcy).

Moreover, the evidence necessary to prove Plaintiffs' and the Class's claims will come largely from United's and Defendant's own records, rather than from individual Class members themselves. Thus, the only claim at issue in this case presents numerous common and predominant issues for the Class and is subject to generalized proofs. As such, the predominance requirement is also satisfied.

Rule 23(b)(3) further requires that the class action mechanism be superior to the other available methods for the fair and efficient adjudication of the controversy. *Fletcher*, 245 F.R.D. at 334. The instant class action is superior to other available methods for litigating Plaintiffs' and the other Class members' claims. Absent class treatment in this case, each individual Class member would be required to present the same or essentially the same legal and factual arguments, in separate and duplicative proceedings, the result of which would be a multiplicity of trials conducted at enormous expense to both the judicial system and the litigants. Such a result would be neither efficient nor fair to anyone, including Defendant. Similarly, class certification would promote consistency of rulings and judgments, giving all parties the benefit of finality. Accordingly, the superiority requirement is satisfied as well.

## CONCLUSION

For the above-stated reasons and for the reasons to be more fully elucidated in their memorandum in support of the instant motion, Plaintiffs respectfully request that the Court (i) enter and reserve ruling on their Motion for Class Certification; (ii) allow for and schedule discovery to take place on class-wide issues; (iii) grant them leave to file a supplemental memorandum in support of his Motion for Class Certification upon the conclusion of class-wide

discovery; (iv) grant their Motion for Class Certification after full briefing of the issues presented

herein; and, (v) provide all other and further relief that the Court deems equitable and just.[2]

Dated: August 30, 2013

                                Respectfully submitted,

                                _____/s/ Myron M. Cherry_____
                                       One of Plaintiffs' Attorneys

Myron M. Cherry
Jacie C. Zolna
John M. Blim
MYRON M. CHERRY & ASSOCIATES LLC
30 North LaSalle Street, Suite 2300
Chicago, Illinois   60602
(312) 372-2100
*Attorneys for Plaintiffs*

---

2 Plaintiffs respectfully reserve the right to amend the putative Class definition at a later point in time, including after the conclusion of class-wide discovery, subject to Court approval.