UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES BARNES, PHILLIP WHITEHEAD, WALTER CLARK, DAVID BISHOP, and ERIC LISH, individually and on behalf of all others similarly situated, | ) ) ) ) ) ) | 13 C 6243 |
| | ) | Judge Feinerman |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| AIR LINE PILOTS ASSOCIATION, INTERNATIONAL, | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

James Barnes, Phillip Whitehead, Walter Clark, David Bishop, and Eric Lish, on behalf of themselves and two putative sub-classes of United Airlines pilots, the first consisting of management pilots and the second of pilot instructors, allege in this suit that Air Line Pilots Association, International ("ALPA"), unlawfully discriminated against them in allocating $225 million of retroactive pay that United provided to its pilots after ALPA and United entered into a collective bargaining agreement in late 2012. Doc. 29. The amended complaint alleges that ALPA breached its duty of fair representation to both sub-classes under the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.*, and, in the alternative as to the management pilots only, that ALPA unjustly enriched itself in violation of Illinois law by accepting the management pilots' payment of dues and contract maintenance fees. *Ibid.* ALPA moved to dismiss the case in its entirety under Federal Rule of Civil Procedure 12(b)(6) or for summary judgment under Rule 56, Doc. 32, and Plaintiffs requested additional discovery under Rule 56(d), Doc. 57 at 30-31.

ALPA's motion is denied, and Plaintiffs will be allowed to take additional discovery limited to the potentially dispositive issue set forth below.

**Background**

Because both sides have presented evidence outside the pleadings to support their respective positions, Docs. 35, 38, 51-52, 60, and because ALPA's motion cannot be resolved solely on the materials that may be considered under Rule 12(b)(6), the court will treat the motion as having been brought under Rule 56. *See* Fed. R. Civ. P. 12(d). The following facts are stated as favorably to Plaintiffs, the non-movants, as permitted by the record and Local Rule 56.1. *See Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012). Certain relevant background facts also will be drawn from the amended complaint.

ALPA is a labor organization that represents the flight deck crew members and pilot instructors employed by United. Doc. 52 at ¶ 2. Prior to 2010, United pilots worked under a concessionary collective bargaining agreement ("2003 Agreement") that had been negotiated by ALPA in 2003, at a time when United was in bankruptcy. Doc. 29 at ¶ 12. The 2003 Agreement's term ended on January 1, 2010, but the RLA required the pilots to continue working as though it were still in force until a new agreement could be negotiated and executed. *Ibid*. Negotiations for the new agreement began in 2010 and lasted nearly three years. *Id*. at ¶ 13. During that time, United pilots' salaries were effectively frozen under the pay scale set forth in the 2003 Agreement. *Id*. at ¶ 14. Also during that time, United merged with Continental Airlines. *Id*. at ¶ 13.

At the end of 2012, ALPA and United agreed on a new collective bargaining agreement ("2012 Agreement"), which applies to both United and Continental pilots. *Ibid*. During negotiations, ALPA demanded that the new agreement include retroactive pay ("retro pay") to

compensate all pilots for lost earnings caused by the three-year delay in reaching the new agreement. *Id*. at ¶ 14; Doc. 38-7 at 3. This demand was consistent with ALPA policy as reflected in the ALPA Administrative Manual, which provides that "[i]n order to prevent costly procrastination by airline managements during contract negotiations, ALPA advocates the retention of a retroactivity factor effective from the contract amendable date," Doc. 60 at ¶ 27, and the Policy Manual for ALPA's United Airlines Master Executive Council, which provides that "[a]ll future Agreements between United Airlines and ALPA shall contain retroactive application of any pay raises or retirement or benefit improvements to the amendable date of the contract," *id*. at ¶ 28.

As memorialized in Letter of Agreement 24 ("LOA 24"), United agreed to pay $400 million to settle ALPA's demand for retro pay and to finalize the 2012 Agreement. *Id*. at ¶ 29; Doc. 38-2 at 12-33. The purpose of the $400 million payment was to restore to the maximum extent possible the wages that the pilots would have earned had there not been a delay in negotiating a new contract from the amendable date of the 2003 Agreement. Doc. 60 at ¶ 29. An intra-union arbitration allocated $225 million to the United pilots and $175 million to the Continental pilots. *Id*. at ¶ 30; Doc. 38-2 at 15. ALPA allocated the $225 million retro pay among the United pilots through a complex formula, the details of which are irrelevant for present purposes. Doc. 38-3; Doc. 38-7 at 3-6.

Most United pilots function most of the time as line pilots, whose work consists of flying customers from one location to another. Doc. 29 at ¶ 19. A small minority of United's pilots work as pilot instructors or management pilots. *Ibid.* During the relevant time period, Bishop and Lish worked as pilot instructors, and Barnes, Whitehead, and Clark worked as management pilots. Doc. 52 at ¶ 1. They claim that ALPA allocated the $225 million in retro pay in a manner

3

that unfairly discriminated against the management pilots and pilot instructors; again, the details of that argument are unimportant for present purposes. Doc. 29 at ¶¶ 30-39, 47-52.

LOA 24 provides that any disputes concerning the allocation methodology are subject to the dispute resolution process set forth in Section 40, Part 3.J of the ALPA Administrative Manual. Doc. 38-2 at 13. Under that provision, an aggrieved party may challenge an allocation decision before the Executive Council, Doc. 38-5 at 4-6, and "[t]he Executive Council decision shall be final and binding and the decision of [ALPA] regarding the allocation, unless an appeal to an expedited arbitration process is filed within seven (7) working days," *id*. at 6. The arbitration process "may be invoked" by, among others, "a pilot or pilots who invoked and pursued the review process to a conclusion before the Executive Council." *Ibid*. Section 40, Part 3.J refers to the dispute resolution process as "[a]n expedited dispute resolution procedure, including arbitration as the final step … with the means to resolve a dispute over allocation decisions, without the need for expensive, lengthy, and risky litigation." *Id*. at 2.

Numerous pilot instructors and management pilots—including Barnes and Whitehead—invoked the dispute resolution process to challenge the retro pay allocation before the Executive Council. Doc. 52 at ¶ 10; Doc. 60 at ¶¶ 36-39. The Executive Council upheld the allocation. Doc. 38-6. Some pilot instructors and management pilots then appealed the Executive Council's decision to arbitration; in so doing, they proposed to ALPA that: (1) the parties jointly select the arbitrator; (2) the arbitrator be instructed to make an independent decision without giving deference to either side; (3) the parties be allowed to take some discovery; and (4) the arbitration proceed on behalf of a class of affected individuals. Doc. 60 at ¶ 37. ALPA refused to accept these proposals. *Ibid*. The arbitrator upheld the allocation in an Opinion and Award dated May 21, 2013. Doc. 38-7.

**Discussion**

The RLA provides that "[e]mployees … have the right to organize and bargain collectively through representatives of their own choosing." 45 U.S.C. § 152, Fourth. "The RLA was enacted to encourage collective bargaining by … parties in order to prevent, if possible, wasteful strikes and interruptions of interstate commerce." *Air Line Pilots Ass'n, Int'l v. United Air Lines, Inc.*, 802 F.2d 886, 895 (7th Cir. 1986) (quoting *Detroit & Toledo Shore Line R.R. v. United Transp. Union*, 396 U.S. 142, 148 (1969)) (internal quotation marks omitted). Congress amended the RLA in 1936 to cover the airline industry. *See id*. at 894 n.5; 45 U.S.C. § 181. The Supreme Court has held that the RLA requires unions to fairly represent union members. *See Steele v. Louisville Nashville R.R. Co.*, 323 U.S. 192, 202-03 (1944) (holding that the RLA "impose[s] on the bargaining representative of a craft or class of employees the duty to exercise fairly the power conferred upon it in behalf of all those for whom it acts"). The RLA thus "affords an employee an implied right of action against his union for breach of the duty of fair representation." *Steffens v. Bhd. of Ry., Airline & Steamship Clerks, Freight Handlers, Express & Station Emps.*, 797 F.2d 442, 445 (7th Cir. 1986).

As noted above, Plaintiffs claim that ALPA violated its duty of fair representation by unfairly allocating the $225 million in retro pay among the United pilots. ALPA seeks judgment on the ground that it satisfied its duty of fair representation by providing Plaintiffs (and the putative sub-classes) with a dispute resolution mechanism for resolving their challenge to the allocation. Doc. 34 at 16-17. To support its submission, ALPA notes that the Executive Committee and then the arbitrator upheld the allocation, and it cites § 153 First (q) of the RLA, 45 U.S.C. § 153 First (q), for the proposition that "an arbitration award [may] be disturbed [only] if there is a violation of the RLA, arbitral fraud, corruption[,] or if the award was beyond the

5

jurisdiction of the arbitrator." Doc. 34 at 17. That provision indeed allows a court to "disturb an arbitration award only if the arbitrator did not comply with the Railway Labor Act, exceeded the arbitral jurisdiction, or committed fraud," which the Seventh Circuit has called "one of the most deferential standards of judicial review in all of federal law." *Bhd. of Locomotive Eng'rs and Trainmen, Gen. Comm. of Adjustment, Cent. Conference v. Union Pac. R.R. Co.*, 719 F.3d 801, 803 (7th Cir. 2013).

Plaintiffs correctly respond that § 153 First, by its terms, applies only to disputes between employees (either individually or as part of a union) and a carrier, and not to disputes between a union and its own members. *See Czosek v. O'Mara*, 397 U.S. 25, 27-28 (1970) ("And surely it is beyond cavil that a suit against the union for breach of its duty of fair representation is not within the jurisdiction of the National Railroad Adjustment Board [established by § 153 First] or subject to the ordinary rule that administrative remedies should be exhausted before resort to the courts."); *Conley v. Gibson*, 355 U.S. 41, 44 (1957) ("But § 3 First (i) by its own terms applies only to 'disputes between an employee or group of employees and a carrier or carriers.' This case involves no dispute between employee and employer but to the contrary is a suit by employees against the bargaining agent to enforce their statutory right not to be unfairly discriminated against by it in bargaining.") (internal citation omitted). The point is immaterial, however, because *Air Wisconsin Pilots Protection Committee v. Sanderson*, 909 F.2d 213 (7th Cir. 1990), provides that a standard of review materially identical to the § 153 First (q) standard governs judicial review of arbitrations in the airline industry between a union and its members.

In *Sanderson*, the plaintiff pilots claimed that ALPA violated its duty of fair representation regarding the merger of pilot seniority lists following the merger of Air Wisconsin and Mississippi Valley Airlines. *Id.* at 214. ALPA directed each airline's pilots to choose two

6

representatives to negotiate the merger of the seniority lists and, if the negotiations broke down, which they did, the dispute was to be submitted to an intra-union board of arbitrators whose award was to "be final and binding on all parties to the arbitration and … defended by ALPA." *Id*. at 214-15. The arbitrators made their decision, and the plaintiffs, a group of Air Wisconsin pilots, asked the federal court to overturn the award, arguing that ALPA violated its duty of fair representation to them. *Id*. at 215-16. The Seventh Circuit rejected this claim, holding that ALPA satisfied its duty "by establishing, long before the case arose, a fair *process* for determining seniority in an airline resulting from a merger," and that although "[t]he plaintiffs disagree violently with the result of the arbitration in this case … [they] have not pointed to any features of the process—whether the method of selecting the arbitrators, or their background, or the procedures they employed—as being unfair." *Id*. at 216. The Seventh Circuit then noted that "ALPA's belief that such arbitrations should be final and binding … would not have prevented the pilots from challenging the arbitration award in court, if the award were infected by fraud or by a serious conflict of interest or were inconsistent with the terms of reference to arbitration." *Ibid*. Although the Seventh Circuit did not support that last point with a direct citation to § 153 First (q)—after all, that provision did not apply, as the arbitration was between a union and its members rather than between the union and the airline—it did cite *Brotherhood of Locomotive Engineers v. Atchison, Topeka & Santa Fe Railway*, 768 F.2d 914, 921 (7th Cir. 1985), which itself applied that provision and its very deferential standard.

*Sanderson*'s discussion of that point was a dictum, as the plaintiff pilots there did not challenge the arbitration award on grounds of fraud or conflict of interest. *See Sanderson*, 909 F.2d at 216. This court does not and could not properly consider itself bound by that dictum. *See Cole Energy Dev. Co. v. Ingersoll-Rand Co.*, 8 F.3d 607, 609 (7th Cir. 1993) (holding that

7

"the lower court … is not bound by the higher court's dicta," even under the law of the case doctrine); *Robinson v. Bergstrom*, 579 F.2d 401, 405 (7th Cir. 1978) ("both discussions [in two Seventh Circuit cases] are dicta, and therefore were not binding on the district court"), *overruled on other grounds*, *Polk Cnty. v. Dodson*, 454 U.S. 312 (1981), *as recognized by Gibson v. City of Chicago*, 910 F.2d 1510, 1514 (7th Cir. 1990). But the *Sanderson* dictum was a considered dictum, and just as the Seventh Circuit follows considered dicta announced by the Supreme Court, *see Reich v. Cont'l Cas. Co.*, 33 F.3d 754, 757 (7th Cir. 1994), this court chooses to follow the dictum from *Sanderson*. Among other reasons, the dictum fully accords with the substantial deference that the Seventh Circuit invariably gives to labor and other employment-related arbitration awards in a variety of contexts. *See Evans v. U.S. Postal Serv.*, 219 F. App'x 527, 529 (7th Cir. 2007) ("[the employee] must accept the arbitral result as final, for there is a strong policy against courts upsetting arbitral decisions, particularly in the area of labor law"); *Ganton Techs., Inc. v. Int'l Union, United Auto., Aerospace and Agric. Implement Workers of Am., U.A.W., Local 627*, 358 F.3d 459, 462 (7th Cir. 2004) ("Judicial review of an arbitrator's decision is limited. The Court may not consider the disputants' arguments afresh, nor may it overturn the arbitrator's decision on the ground that the arbitrator committed serious error. Rather, the role of the reviewing court is to determine whether the arbitrator's award draws its essence from the collective bargaining agreement, and only if there is no possible interpretative route to the award, so [that] a noncontractual basis can be inferred, may the award be set aside.") (citations and internal quotation marks omitted); *Dean v. Sullivan*, 118 F.3d 1170, 1171 (7th Cir. 1997) ("[T]he potential grounds for refusing enforcement [of the arbitration decision] are extraordinarily narrow. This limited form of judicial review guards against the risk of runaway arbiters. It certainly does not license a federal judge to consider the disputants' arguments

afresh.") (citing *United Steelworkers of Am. v. Enter. Wheel and Car Corp.*, 363 U.S. 593, 597 (1960)); *Pierce v. Commonwealth Edison Co.*, 112 F.3d 893, 895 (7th Cir. 1997) ("Dragging the union into this case would be a waste of everyone's time and money because, even if the union were to appear as a plaintiff, the decision of the arbitral panel would be invulnerable. It heard evidence and found facts that establish just cause for discharge. Although Pierce believes that the findings are not correct, judges lack the authority to review arbitrators' findings that are free of any taint of fraud or corruption—and no such taint is alleged to exist."); *Chi. Typographical Union No. 16 v. Chi. Sun-Times, Inc.*, 935 F.3d 1501, 1505 (7th Cir. 1991) ("Unless the award was procured by fraud, or the arbitrator had a serious conflict of interest—circumstances that invalidate the contractual commitment to abide by the arbitrator's result—his interpretation of the contract binds the court asked to enforce the award or to set it aside."); *Thomas v. United Parcel Serv., Inc.*, 890 F.2d 909, 915 (7th Cir. 1989) ("The courts have adopted an unwavering attitude of deference to arbitral decisions, particularly in the labor context, because of the federal labor policy encouraging the private settlement of labor disputes.") (citations omitted).

Plaintiffs argue in the alternative that the arbitrator's decision deserves no deference because the ALPA Administrative Manual did not explicitly label the arbitration ruling "final and binding," thus distinguishing the arbitration here from the one in *Sanderson*. Doc. 57 at 26-27. The argument fails to persuade. The Seventh Circuit has held that "the finality of an arbitration … should be judged by substance and effect, not by superficial technicalities." *Olson v. Wexford Clearing Servs. Corp.*, 397 F.3d 488, 491-92 (7th Cir. 2005) (internal quotation marks omitted); *see also Publicis Commc'n v. True N. Commc'ns, Inc.*, 206 F.3d 725, 729 (7th Cir. 2000) ("courts go beyond a document's heading and delve into its substance and impact to determine whether the [arbitration] decision is final"). Section 40, Part 3.J of the ALPA

Administrative Manual provides that "[t]he Executive Council decision shall be final and binding and the decision of [ALPA] regarding the allocation, unless an appeal to an expedited arbitration process is filed within seven (7) working days." Doc. 38-5 at 6. It is true that the Manual says that the *Executive Council's* decision is "final and binding," and that it does not *explicitly* say the same thing about the *arbitrator's* decision. But the only plausible reading of the Manual is that the arbitrator's decision is final and binding as well; if the Executive Committee's decision is final and binding unless that decision is appealed to an arbitrator, then why would the Manual make the arbitrator's decision, which reviews and by necessity post-dates the Executive Committee's decision, anything *less* than final and binding? The Manual drives home the point by referring to the entirety of the dispute resolution process as "[a]n expedited dispute resolution procedure, including arbitration as the *final step* … with the means to resolve a dispute over allocation decisions, without the need for expensive, lengthy, and risky litigation." *Id*. at 2 (emphasis added). The "final step" of an intra-union process where the intermediate step is "final and binding" unless the final step is pursued is, by necessity, also final and binding. *See Idea Nuova, Inc. v. GM Licensing Grp.*, 617 F.3d 177, 180 (2d Cir. 2010) ("such ['final and binding'] language [is] not essential; there [are] equivalent ways of expressing agreement to binding arbitration") (internal quotation marks omitted); *Dow Corning Corp. v. Safety Nat'l Cas. Corp.*, 335 F.3d 742, 746 (8th Cir. 2003) (in determining whether arbitration was binding or non-binding, noting that "federal policy favors arbitration, and that normally means binding arbitration"); *McKee v. Home Buyers Warranty Corp. II*, 45 F.3d 981, 985 (5th Cir. 1995) (same); *Townsend v. McNeill*, 1972 WL 891, at *3 (N.D. Ill. Sept. 8, 1972) (holding that where a committee decision was the final step in a dispute resolution process but was not explicitly

labeled "final and binding," "[t]he parties … were quite clear that the decision of the Joint Committee was to be 'final' and the Court will honor the intentions of the parties").

There is one wrinkle: only some of our five plaintiffs pursued the dispute resolution process. ALPA argues that the other plaintiffs need to exhaust their internal union remedies, Doc. 34 at 16, while Plaintiffs respond that exhaustion would be futile given the arbitrator's prior decision and therefore is unnecessary, Doc. 57 at 27-29. The court is inclined to agree with Plaintiffs, but at this point the issue is moot. At oral argument on ALPA's motion, the court engaged in this colloquy with Plaintiffs' counsel:

> THE COURT: Okay. And if—let's say I find that these plaintiffs don't have to exhaust in front of Arbitrator Block because it's a foregone conclusion. He would just say the same thing. And, in fact, the arbitration he did conduct was, for all intents and purposes, applicable to everybody because if the challengers won, relief would have been given to everybody who was similarly situated.
>
> So, I'm wondering, and I'm asking the plaintiffs, if I agree with you on failure to exhaust, does that mean that the plaintiffs then get … whatever the analysis would be in terms of whether the arbitration decision is entitled to any respect, and if so, whether that—fraud and collusion can overcome the arbitration award?
>
> MR. ZOLNA: Well, our position is that if you agree with us, which I hope you do, that they are not barred by the exhaustion argument, that no deference is given to the arbitration award ….
>
> THE COURT: … But whatever deference is owed to the arbitration award, your plaintiffs are stuck with it?
>
> MR. ZOLNA: That would be correct.
>
> THE COURT: Whether it's zero or 100 percent?
>
> MR. ZOLNA: That would be correct.

2/26/2014 Tr. at 39. Thus, even assuming that the fair representation claims of the plaintiffs who did not participate in the dispute resolution process are not barred on exhaustion grounds, those

11

plaintiffs still must overcome the same hurdle faced by the plaintiffs who did participate—showing that the arbitration is not entitled to deference under *Sanderson*.

ALPA concedes, as it must, that Plaintiffs are entitled to discovery on the integrity of the arbitration—that is, on whether the arbitration was tainted by fraud or corruption, whether the arbitrator suffered from a conflict of interest, and any other matter pertinent to the inquiry envisioned by *Sanderson*. Doc. 59 at 15-16. Because the deference to be accorded the arbitrator's decision is potentially case dispositive of Plaintiffs' RLA fair representation claims, there is no need to reach ALPA's other arguments on those claims, and nor is there any need at this point for discovery on the other issues in the case, such as whether ALPA owed the management pilots a fair representation duty in the first place and whether ALPA's allocation of the $225 million in fact unfairly discriminated against United pilot instructors and management pilots. And if ALPA ends up prevailing on the RLA claims, then at that point the court will decide whether to retain or relinquish jurisdiction over the state law unjust enrichment claim. Doc. 29 at ¶ 10 (premising jurisdiction over the state law claim on the supplemental jurisdiction statute, 28 U.S.C. § 1367(a), and not on the diversity statute, 28 U.S.C. § 1332).

**Conclusion**

For the foregoing reasons, ALPA's motion to dismiss or for summary judgment is denied. Defendant shall answer the amended complaint by September 4, 2014. The parties shall engage in discovery limited to the matters set forth above.

August 14, 2014

United States District Judge