UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES BARNES, PHILLIP WHITEHEAD, WALTER CLARK, DAVID BISHOP, and ERIC LISH, individually and on behalf of all others similarly situated, | ) ) ) ) ) ) | 13 C 6243 Judge Feinerman |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| AIR LINE PILOTS ASSOCIATION, INTERNANATIONAL, | ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

United Airlines pilots James Barnes, Phillip Whitehead, Walter Clark, David Bishop, and Eric Lish, on behalf of themselves and two putative subclasses of United pilots, the first consisting of management pilots and the second of pilot instructors, allege in this suit that Air Line Pilots Association, International ("ALPA") unlawfully discriminated against them in allocating $225 million of retroactive pay ("retro pay") that United provided to its pilots after ALPA and United entered into a collective bargaining agreement in late 2012. Doc. 29. The amended complaint claims that ALPA breached its duty of fair representation to both subclasses under the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.,* and, in the alternative as to the management pilots only, that ALPA unjustly enriched itself in violation of Illinois law by accepting the management pilots' payment of dues and contract maintenance fees. *Ibid.* Earlier in the litigation, the court denied ALPA's motion to dismiss and/or for summary judgment, ruling that Plaintiffs were entitled to limited discovery on the question whether ALPA discharged its duty of fair representation by providing a process for arbitrating disputes over how

1

the retro pay was allocated among United pilots. Docs. 83-84 (reported at 2014 WL 4057419 (N.D. Ill. Aug. 14, 2014)); *see Air Wis. Pilots Protection Comm. v. Sanderson*, 909 F.2d 213, 215-16 (7th Cir. 1990). ALPA now moves for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), arguing under *Cunningham v. Air Line Pilots Association, International*, 767 F.3d 539 (7th Cir. 2014), that it satisfied its duty of fair representation on the merits, even putting aside the fairness or unfairness of its arbitration process. Doc. 132. The motion is granted as to the pilot instructors and denied as to the management pilots.

**Background**

The general background of this case is set forth in the court's prior opinion, familiarity with which is assumed. As on a Rule 12(b)(6) motion, a court assessing a Rule 12(c) motion assumes the truth of the complaint's well-pleaded factual allegations, but not its legal conclusions. *See Lodholtz v. York Risk Servs. Grp., Inc.*, 778 F.3d 635, 639 (7th Cir. 2015) ("A Rule 12(c) motion is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6)."). The court also must consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Plaintiffs' brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (internal quotation marks omitted). The facts are set forth as favorably to Plaintiffs as those materials allow. *See Meade v. Moraine Valley Cmty. Coll.*, 770 F.3d 680, 682 (7th Cir. 2014).

ALPA is a labor organization that represents United pilots. In 2003, when United was in bankruptcy, ALPA and United negotiated a collective bargaining agreement ("2003 agreement"). Doc. 29 at ¶ 12. The 2003 agreement expired in 2010, at which point ALPA and United began

negotiating a new agreement. *Id*. at ¶¶ 12-13. The RLA required United pilots to continue working as though the 2003 agreement were still in effect until a new agreement was negotiated and executed. *Ibid*. During the negotiations, which took nearly three years, United merged with Continental Airlines, and the new collective bargaining agreement applied to both United and Continental pilots. *Id*. at ¶ 13.

The new agreement, the 2012 United Pilot Agreement ("2012 UPA"), resulted in pay increases for all pilots. Of all the pilot groups, pilot instructors "receiv[ed] the biggest pay increase under the 2012 UPA." *Id*. at ¶ 52; *see also* Doc. 149 at 10-11. The 2012 UPA also provided $400 million in retro pay to compensate pilots for working at the depressed 2003 rates during the negotiations. Doc. 29 at ¶¶ 14, 16. An intra-union arbitration divided the retro pay between the two pre-merger airlines, with the legacy United pilots receiving $225 million and the legacy Continental pilots $175 million. *Id*. at ¶ 16. The retro pay did not fully compensate United pilots for what they would have earned between 2010 and 2013 had the 2012 UPA pay rates taken effect in 2010. *Id*. at ¶ 17.

Most United pilots work most of the time as line pilots, flying customers from one location to another. *Id*. at ¶ 19. A small minority of pilots spend some or all of their time functioning as pilot instructors or in various managerial roles as management pilots. *Ibid*. During the relevant time period, Bishop and Lish worked as pilot instructors, and Barnes, Whitehead, and Clark worked as management pilots. *Id*. at ¶ 53.

Pilot pay is principally based on an hourly rate determined by fleet (the type of aircraft the pilot flies), seat (cabin position, either First Officer or Captain), and longevity (time since hiring); the combination of fleet, seat, and longevity comprises a "bid category," and each bid category has an hourly pay rate. *Id*. at ¶ 25. A line pilot's monthly pay is the product of that

pay rate and the number of hours she works per month. *Ibid*. Under the 2003 agreement, a management pilot's monthly pay was based on her individual bid category, but that category's pay rate was multiplied by a predetermined number of hours per month (at least 95) rather than the number of hours she actually worked. *Id*. at ¶ 26. A pilot instructor's compensation under the 2003 agreement was the product of a pre-determined bid category (equivalent to a First Officer with six years' longevity flying 767/757 aircraft) and hours worked, capped at 89 hours per month. *Id*. at ¶ 44. As noted, pilot instructors received the largest pay increase under the 2012 UPA; the increase resulted primarily from changing the cap to the equivalent of 90 hours for a First Officer with nine years' experience at the second highest aircraft (A350, 747, 777, 787) rate. *Id*. at ¶ 46.

Responsibility for allocating the $225 million among the United legacy pilots fell to ALPA. As set forth in Letter of Agreement 24 ("LOA 24"), the Master Executive Council for the United pilots ("MEC") devised an allocation formula. The first step of the formula was to determine the pilot's "Delta Differential," which was calculated by subtracting her actual hourly rate under the 2003 agreement from the Delta Airlines 2008 rate for the same bid category. *Id*. at ¶¶ 20, 32 n.4; Doc. 149-1 at 1-23. The MEC then multiplied the pilot's retro pay hours by her Delta Differential to arrive at her "Individual Delta Differential." Doc. 149-1 at 6-7, 11. The MEC then divided each pilot's Individual Delta Differential by the sum of all United pilots' Delta Differentials, and multiplied that figure by $225 million to arrive at an individual retro pay amount. *Id*. at 11-12. The Delta Differential for pilot instructors was the difference between what Delta paid a 767/757 First Officer with six years' longevity (the corresponding bid category under United's 2003 agreement) and the 2003 United rate for that bid category. *Id*. at 7.

4

The allocation formula was subject to several exceptions applicable to management pilots. Management pilots did not receive any retro pay hours for time spent in certain high-level management positions, such as managing director or chief pilot. *Id*. at 8. For time spent in lower-level management positions, their credit hours were set at the average monthly credit hours for pilots in their same bid categories. *Ibid*. And if a management pilot received a managerial bonus from United, the pilot's retro pay amount was reduced, or "offset," by that bonus. *Ibid*.

**Discussion**

The RLA empowers the members of a given craft or class of employees to determine, by majority vote, who shall represent them under the Act; whomever they choose, typically a labor union, then acts as the employees' exclusive representative in bargaining with the employer under the RLA. *See* 45 U.S.C. § 152, Second, Fourth, Sixth, Seventh; *Steele v. Louisville Nashville R.R. Co.*, 323 U.S. 192, 199-200 (1944). The RLA provides that "[e]mployees … have the right to organize and bargain collectively through representatives of their own choosing." 45 U.S.C. § 152, Fourth. "The RLA was enacted to encourage collective bargaining by … parties in order to prevent, if possible, wasteful strikes and interruptions of interstate commerce." *Air Line Pilots Ass'n, Int'l v. United Air Lines, Inc.*, 802 F.2d 886, 895 (7th Cir. 1986) (quoting *Detroit & Toledo Shore Line R.R. v. United Transp. Union*, 396 U.S. 142, 148 (1969)) (internal quotation marks omitted). The RLA requires unions to represent union members fairly. *See Steele*, 323 U.S. at 202-03 (holding that the RLA "impose[s] on the bargaining representative of a craft or class of employees the duty to exercise fairly the power conferred upon it in behalf of all those for whom it acts"). The RLA thus "affords an employee an implied right of action against his

union for breach of the duty of fair representation." *Steffens v. Bhd. of Ry., Airline & S.S. Clerks*, 797 F.2d 442, 445 (7th Cir. 1986).

Plaintiffs allege that the allocation formula unfairly discriminated against pilot instructors and management pilots, in violation of ALPA's duty of fair representation ("DFR") under the RLA. A union's DFR is "a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca v. Sipes*, 386 U.S. 171, 177 (1967). A breach of the DFR "occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Id.* at 190; *see also Cunningham*, 769 F.3d at 541-42. The standard applies to all aspects of a union's representation of its members. *See Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991); *Sweeney v. Pence*, 767 F.3d 654, 672 (7th Cir. 2014); *Rakestraw v. United Airlines, Inc.*, 981 F.3d 1524, 1530 (7th Cir. 1992). "[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational." *O'Neill*, 499 U.S. at 67 (internal quotation marks omitted). "This 'wide range of reasonableness' gives the union room to make discretionary decisions and choices, even if those judgments are ultimately wrong." *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 45-46 (1998); *see also Ooley v. Schwitzer Div.*, 961 F.2d 1293, 1302 (7th Cir. 1992) ("courts should not substitute their judgment for that of the union, even if, with the benefit of hindsight, it appears that the union could have made a better call").

The union's discretion is not unlimited. "A union would act in bad faith if, for example, it disfavored members who supported a losing candidate for union office," and "would act discriminatorily if, for example, it favored members of one race over members of a different

6

race." *Cunningham*, 769 F.3d at 542. Plaintiffs do not allege that ALPA's retro pay allocation decisions were motivated by those particular considerations, but they do claim that ALPA's treatment of management pilots and pilot instructors unfairly discriminated against those groups. As the Seventh Circuit recently observed, "[t]he plaintiffs in *O'Neill* made an argument similar to [this] one …, and the Court gave a brusque reply, noting that 'some form of allocation [between competing groups of pilots] was inevitable. A rational compromise on the initial allocation was not invidious "discrimination" of the kind prohibited by the duty of fair representation.'" *Ibid.* (quoting *O'Neill*, 499 U.S. at 81) (final alteration in the original). Accordingly, the following standard applies to the discrimination claims made here:

> Any substantive examination of a union's performance … must be highly deferential, recognizing the wide latitude that negotiators need for the effective performance of their bargaining responsibilities. For that reason, the final product of the bargaining process may constitute evidence of a breach of duty only if it can be fairly characterized as so far outside a wide range of reasonableness, that it is wholly irrational or arbitrary.

*Ibid.* (quoting *O'Neill*, 499 U.S. at 78) (internal quotation marks omitted). Applying that standard, "[t]he Court in *O'Neill* found the union's decision not discriminatory because, with different pilots on different sides of a strike, a strike-ending compromise that favored some over others was inevitable." *Cunningham*, 769 F.3d at 542.

Relying heavily on *O'Neill* and *Cunningham*, ALPA moves for a Rule 12(c) judgment on both the pilot instructors' and the management pilots' DFR claims. A Rule 12(c) motion is not categorically inappropriate in a DFR case; as *Cunningham* explained, it is possible for the "allegations of the complaint, plus the terms of the agreements, [to be] enough in themselves to defeat a claim of discrimination." *Ibid.*

7

**I.      Pilot Instructors**

Plaintiffs allege that ALPA arbitrarily and irrationally calculated pilot instructor retro pay in a way that did not account for the most significant aspect of their substantial pay raise under the 2012 UPA. Doc. 29 at ¶¶ 3, 50; Doc. 149 at 22-25. ALPA responds that because it applied the same allocation formula to all pilots, it did not act arbitrarily or irrationally. Doc. 133 at 12-14; Doc. 156 at 8-10. Plaintiffs retort that the retro pay allocation, in practical effect, did not afford all pilots equal treatment. Doc. 149 at 22.

As noted above, ALPA compared each pilot's hourly pay rate under the United 2003 agreement with the corresponding pay rate under the 2008 Delta contract. *Ibid*. Plaintiffs contend that this supposedly uniform measure harmed pilot instructors because they are paid not as hourly employees, but instead according to a set pay formula depending on a pre-determined bid category and fixed number of hours. *Ibid*; Doc. 29 at ¶ 44; Doc. 149-1 at 7. Line pilot pay, by contrast, varies with a pilot's individual bid category and hours worked. Doc. 149 at 22-23. According to Plaintiffs, because the pilot instructor pay increase in the 2012 UPA resulted primarily from changes to their pay *formula*, basing their retro pay on their hourly pay *rate* in the 2003 agreement "excluded one-half of [their] wage increase" in the UPA. Because Plaintiffs' argument is somewhat difficult to follow, the court reproduces the key paragraph in its entirety:

> Here, ALPA claims that it treated line pilots and pilot instructors "equally" in calculating their retro pay since for both groups of pilots it compared the hourly pay rates under the 2003 Agreement to the hourly pay rates under the 2008 Delta contract. But pilot instructors are not hourly employees. They are paid a salary based on a pre-determined combination of hours, seat, fleet and longevity. Unlike line pilots, whose pay increases were based on *hourly pay* rate increases, pilot instructors' pay increase was based in significant part on the increase to their pre-determined *pay formula*. Far from adopting an "equal" methodology, ALPA instead carved out a special rule just for pilot instructors that specifically eliminated from their retro pay calculation that component of their pay raise. In other words, while ALPA took into account *the entirety* of line pilots' wage increase in calculating retro

8

> pay, it specifically *excluded one-half* of the pilot instructors' wage increase in calculating their retro pay. There was no equal treatment here.

*Id*. at 22.

This argument fails to persuade. As an initial matter, contrary to Plaintiffs' submission, ALPA did not take into account *any* pilot's pay increase from the 2012 UPA in determining retro pay; rather, ALPA compared pay under the 2003 agreement with pay under the 2008 Delta contract. Moreover, it is not clear which alternative formula Plaintiffs would have wanted ALPA to use for pilot instructors. The most logical alternatives would have been to subtract the 2003 agreement's pay formula from the pilot instructor pay formula in either the 2012 UPA or the 2008 Delta contract—as opposed to from the formula Delta employed for a 767/757 First Officer with six years' longevity, which is the metric that ALPA actually used—but Plaintiffs make clear that they want neither of those things:

> Again, to be abundantly clear, Plaintiffs are *not*—as ALPA misrepresents in its motion …—claiming that ALPA breached its DFR to pilot instructors by failing to use the pay formula under the Delta contract or even the pay formula under the 2012 UPA …. Plaintiffs are only claiming that the formula ALPA did adopt—which failed to account for *any* increase in their pay formula—was completely irrational and in no way accurately reflected their actual losses.

*Id*. at 23 n.8. Instead, Plaintiffs vaguely contend that ALPA "breached its DFR by completely disregarding an entire, and the most significant, aspect of [the pilot instructor] pay raise in calculating their retro pay." *Id*. at 23. Plaintiffs do not say how ALPA could have accounted for this aspect of their pay raise, and their inability to propose an alternative formula undermines their claim that ALPA's formula was "wholly irrational or arbitrary." *Cunningham*, 769 F.3d at 542 (internal quotation marks omitted). Mere dissatisfaction with the outcome reached by a union is not the stuff of a DFR claim. *See Tom Beu Xiong v. Fischer*, 787 F.3d 389, 395 (7th

9

Cir. 2015) ("Whether the Union acted arbitrarily requires inquiry into the objective adequacy of union action.") (internal quotation marks omitted).

With a retro pay pool far less than what it would have taken to fully compensate United pilots for working at depressed wages during negotiations over the 2012 UPA, ALPA could not possibly have made every pilot group happy. *See Ford Motor Co. v. Huffman*, 345 U.S. 330, 338 (1953) ("Inevitably differences arise in the manner and degree to which the terms of any negotiated agreement affect individual employees and classes of employees. The mere existence of such differences does not make them invalid. The complete satisfaction of all who are represented is hardly to be expected."); *Humphrey v. Moore*, 375 U.S. 335, 349-50 (1964) ("Conflict between employees represented by the same union is a recurring fact."). To characterize as "arbitrary" and "irrational" ALPA's decision to use the same formula for pilot instructors and line pilots would impose a burden far heavier than that prescribed by *Vaca*, *O'Neill*, and *Cunningham*. What could be less arbitrary, or more reasonable, than using the same formula for both groups? *See Marquez*, 525 U.S. at 46 ("A union's conduct can be classified as arbitrary only when it is irrational, when it is without a rational basis or explanation.").

This is so even if the allocation formula had the practical effect of favoring line pilots over pilot instructors, as Plaintiffs do not and could not possibly contend that line pilots "won all the battles, or even the lion's share of them." *Cunningham*, 769 F.3d at 542. To the contrary, as Plaintiffs acknowledge, the pilot instructors received the largest pay increase in the 2012 UPA. So Plaintiffs' position in this case is that the pilot instructors should have received not only the largest pay increase in the 2012 UPA, but also a retro pay allocation formula that would have leveraged their pay increase into a larger share of the $225 million pie. In other words, the pilot instructors complain not that they *lost* all of the battles, but that they did not *win* all of them. If

10

pilot instructors actually received what they now seek—the highest pay raise *plus* a beneficial carve-out from the generally applicable retro pay formula—some other pilot group could very well have complained that ALPA had impermissibly favored the pilot instructors.

In the end, ALPA's duty was to "act with some legitimate union purpose that rationally promotes the aggregate welfare of employees in the bargaining unit." *Addington v. U.S. Airline Pilots Ass'n*, 791 F.3d 967, 984 (9th Cir. 2015) (quoting *Rakestraw*, 981 F.2d at 1535) (internal quotation marks and alterations omitted). As another federal court ruled in rejecting a materially identical retro pay DFR claim brought against ALPA by other pilot instructors: "It can hardly be considered unfair or inequitable—much less irrational and arbitrary—for the union to have adopted the same starting point for both groups based on what they already were being paid." *Elwell v. Air Line Pilots Ass'n, Int'l*, 65 F. Supp. 3d 1103, 1109 (D. Colo. 2014); *see also Young-Smith v. United Steelworkers of Am.*, __ F. App'x __, 2015 WL 3875475, at *3 (7th Cir. June 24, 2015) ("These reasons were legitimate and not pretextual, so they defeated [plaintiff's] claim that the union's conduct was arbitrary or discriminatory."). It was rational for ALPA to calculate pilot instructor retro pay as it did, and that is sufficient to defeat the pilot instructors' DFR claim on the pleadings. *See Cunningham*, 769 F.3d at 542 (holding that judgment on the pleadings is warranted where the "allegations of the complaint, plus terms of the agreements, are enough in themselves to defeat a claim of discrimination").

Before concluding, the court notes Plaintiffs' argument that ALPA devised the allocation formula in bad faith to intentionally harm the pilot instructors. Doc. 149 at 23, 26-27. In particular, they contend that ALPA, in an effort to defend its treatment of the pilot instructors, dishonestly suggested that Mark Arellano, a pilot instructor on the MEC, supported the retro pay allocation formula. *Id*. at 26. But the Seventh Circuit has held that "a 'bad' motive does not

11

spoil a collective bargaining agreement that rationally serves the interests of workers as a whole, and that treats employees who are pariahs in the union's eyes no worse than it treats similarly situated supporters of the union." *Rakestraw*, 981 F.2d at 1535. Accordingly, whether or not Arellano endorsed the retro pay allocation, the allocation was rational and not arbitrary, rendering irrelevant ALPA's subjective motivation.

## II. Management Pilots

### A. DFR Claim

Plaintiffs allege that ALPA violated its DFR to the management pilots by: (1) offsetting their retro pay by the amount they received from United in annual incentive bonuses during the negotiation period; (2) using the average number of pay credit hours flown by the management pilot's bid category rather than their actual hours worked; and (3) excluding certain credit hours from the calculation. Doc. 29 at ¶¶ 33-39; Doc. 96 at 3; Doc. 149-1 at 8. ALPA argues that it owed no DFR to management pilots in the first place and that, even if it did, it satisfied its duty. Doc. 34 at 10-12; Doc. 59 at 2-7; Doc. 133 at 17-19; Doc. 156 at 12-14.

As to the first issue, the DFR attaches only to those employees for whom a union serves as the exclusive bargaining representative. *See Humphrey*, 375 U.S. at 368; *Vaca*, 386 U.S. at 177; *Sweeney*, 767 F.3d at 672. The parties dispute whether ALPA had a contractual duty to the management pilots and whether it assumed such a duty through the management pilots' selection of ALPA as their agent, ALPA's past conduct, and United's consent to the arrangement. Doc. 97 at ¶¶ 9-10, 24, 26; Doc. 133 at 17-19; Doc. 149 at 16-19; Doc. 156 at 12-14; *cf. Rossetto v. Pabst Brewing Co.*, 128 F.3d 538, 540 (7th Cir. 1997) ("Although a union has no duty to represent retirees, and retirees need not submit to union representation, retirees are free to make a union their agent if they so choose. And, of course, retiree benefits are a permissive subject of

bargaining—a union may bargain for retirees if the employer agrees."). The court cannot resolve this issue based on the pleadings and other materials that may be considered on a Rule 12(c) motion.

On this record, ALPA arguably led the management pilots to believe that it was representing them in the collective bargaining negotiations with United generally and on the issue of retro pay specifically. ALPA's allocation formula in LOA 24 made specific provisions for management pilots, Doc. 149-1 at 8, and ALPA distributed a share of the retro pay to management pilots, Doc 29 at ¶¶ 30-32; Doc. 50 at 16. ALPA also accepted, without complaint or correction, dues and contract maintenance fees from the management pilots. Doc. 29 at ¶¶ 24, 27, 30, 36, 37, 72. At the very least, these actions create a genuine issue as to whether ALPA acted as the management pilots' representative on the issue of retro pay. *See In re United Airlines*, 453 F.3d 463, 468 (7th Cir. 2006). After all, if ALPA were not the management pilots' representative, then why did it disburse *any* of the retro pay to them? At this stage, a reasonable observer could find that ALPA, through both omission and commission, conveyed to the management pilots that it was negotiating on their behalf and representing their interests in the retro pay allocation, even if it was not legally required to do so. *See Rossetto*, 128 F.3d at 528 (holding that a DFR can attach to a union acting as the representative of retirees even though retired workers are not covered under the RLA); *Foust v. Int'l Bhd. of Elec. Workers*, 572 F.2d 710, 717 (10th Cir. 1978) ("[h]aving undertaken to act affirmatively on behalf of [the plaintiff], the Union is precluded from escaping responsibility by asserting that" the plaintiff should not have "depend[ed] on" the union); *Nedd v United Mine Workers of Am.*, 556 F.2d 190, 200 (3d Cir. 1977) ("While *Chemical Workers v. Pittsburgh Glass*[, 404 U.S. 157 (1971),] held that future retiree benefits were not the subject of mandatory collective bargaining, it also recognized

that such benefits were a permissive subject of bargaining. When the Union elects to undertake such bargaining, the union's duty of fair representation must apply. … The Union need not have done so, and if it had not, the pensioners would have had a remedy against the employers for any delinquencies. But having undertaken, on behalf of the Fund, to enforce the employers' obligation to pay royalties, the Union was not then entitled to act in a manner which discriminated against the pensioners.") (citation omitted), *disapproved of on other grounds*, *Local 144 Nursing Home Pension Fund v. Demisay*, 508 U.S. 581 (1993).

ALPA next argues that even if it owed a DFR to the management pilots, it satisfied that duty. While acknowledging that the allocation formula disadvantaged management pilots in certain respects, ALPA contends that because it made "certain retro pay allocation decisions among pilots in different job classifications as part of a complex deal covering two pilot groups and merged carriers," it did not act arbitrarily, discriminatorily, or in bad faith. Doc. 156 at 3. While ALPA is correct that a union may in "good faith … support[] the position of one group of employees against that of another," *Alvey v. Gen. Elec. Co.*, 622 F.2d 1279, 1287 (7th Cir. 1980) (quoting *Humphrey*, 375 U.S. at 349), viewing the record in Plaintiffs' favor, ALPA has not defeated the possibility of a successful DFR claim.

In particular, ALPA's allocation of the retro pay in a way that injured only the management pilots could, depending on the circumstances, breach the DFR. In contrast to the pilot instructors, the management pilots do not seek an exception to a formula applied to all pilots alike, but rather challenge targeted deviations from that formula directed only at management pilots. Those deviations call into question the "objective adequacy of union action" as to the management pilots. *Tom Beu Xiong*, 787 F.3d at 395. The "possible inference" allowed by the record that ALPA's actions "unfairly singled out" the management pilots is

14

enough for their DFR claim to survive a challenge on the pleadings. *Griffin v. Air Line Pilots Ass'n, Int'l*, 32 F.3d 1079, 1084 (7th Cir. 1994).

B. **Unjust Enrichment Claim**

ALPA seeks dismissal of management pilots' unjust enrichment claim, arguing that it (1) is unavailable where a specific contract governs the parties' relationship, and (2) preempted by federal law. Doc. 133 at 19-20. These arguments are premature at the Rule 12(c) stage.

As explained above, whether ALPA owed the management pilots a DFR, and thus whether a contract governs their relationship, remain open questions. Plaintiffs may plead in the alternative, as they have done here, to cover their bases with an unjust enrichment claim in the event ALPA owed them no DFR. *See Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 615 (7th Cir. 2013) ("A plaintiff may plead as follows: (1) there is an express contract, and the defendant is liable for breach of it; and (2) if there is *not* an express contract, then the defendant is liable for unjustly enriching himself at my expense."). Thus, the management pilots may simultaneously pursue their unjust enrichment and DFR claims for the time being, though of course they may not receive a double recovery. *See Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805 (1999) ("Our ordinary Rules recognize that a person may not be sure in advance upon which legal theory she will succeed, and so permit parties to set forth two or more statements of a claim or defense alternately or hypothetically, and to state as many separate claims or defenses as the party has regardless of consistency."). If it turns out that they have no DFR claim, the court will resolve at that point whether the unjust enrichment claim is preempted by federal law.

## Conclusion

For the foregoing reasons, ALPA's motion for judgment on the pleadings is granted as to pilot instructors and denied as to management pilots. The claims of David Bishop and Eric Lish,

the two pilot instructors, are dismissed. The DFR and unjust enrichment claims of James Barnes, Phillip Whitehead, and Walter Clark, the management pilots, may proceed.

September 30, 2015

United States District Judge