UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES BARNES, PHILLIP WHITEHEAD, WALTER CLARK, DAVID BISHOP, and ERIC LISH, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> AIR LINE PILOTS ASSOCIATION, INTERNANATIONAL, <br><br> Defendant. | 13 C 6243 <br><br> Judge Feinerman |

**MEMORANDUM OPINION AND ORDER**

United Airlines pilots James Barnes, Phillip Whitehead, Walter Clark, David Bishop, and Eric Lish, on behalf of themselves and two putative subclasses of United pilots, the first consisting of management pilots and the second of pilot instructors, brought this suit against Air Line Pilots Association, International ("ALPA"), alleging that it unlawfully discriminated against them in allocating $225 million of retroactive pay ("retro pay") that United provided to its pilots after ALPA and United entered into a collective bargaining agreement in late 2012. Doc. 29. The amended complaint claims that ALPA breached its duty of fair representation ("DFR") to both subclasses under the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.,* and, in the alternative as to the management pilots only, that ALPA unjustly enriched itself in violation of Illinois law by accepting the management pilots' payment of dues and contract maintenance fees. *Ibid.* Earlier in the litigation, the court denied ALPA's motion to dismiss and/or for summary judgment, ruling that Plaintiffs were entitled to limited discovery on the question whether ALPA discharged its duty of fair representation by providing a process for arbitrating disputes over how

1

the retro pay was allocated among United pilots. Docs. 83-84 (reported at 2014 WL 4057419 (N.D. Ill. Aug. 14, 2014)); *see Air Wis. Pilots Protection Comm. v. Sanderson*, 909 F.2d 213, 215-16 (7th Cir. 1990). Earlier today, the court granted ALPA judgment on the pleadings under Federal Rule of Civil Procedure 12(c) as to the pilot instructors, holding that ALPA satisfied its DFR as to those pilots, but allowed the management pilots' claims to proceed. Docs. 188-189 (reported at 2015 WL ____ (N.D. Ill. Sept. 30, 2015)).

Now before the court is Plaintiffs' motion for class certification under Rule 23. Doc. 47. Because the claims brought by the individual pilot instructors (Bishop and Lish) have been dismissed, the motion to certify a pilot instructor class is denied as moot.[*] For the following reasons, class certification is granted to the management pilot class on both the DFR and unjust enrichment claims.

## Background

The relevant facts are set forth in the court's Rule 12(c) opinion, familiarity with which is assumed. To summarize, Barnes, Whitehead, and Clark, all of whom logged hours as

---

[*] As explained at a recent status hearing, the court elected to resolve the Rule 12(c) motion before the Rule 23 motion because, given the pilot instructors' and management pilots' adverse interests—the pilot instructors' preferred retro pay formula necessarily would have marginally harmed the management pilots, and vice versa—class certification would have been denied on the ground that the same counsel could not adequately represent both classes. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 627 (1997) (requiring "structural assurance of fair and adequate representation for the diverse groups and individuals affected"). It therefore made practical sense to first determine whether each pilot group had a viable claim. *Cf. Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432-33 (2013) ("By refusing to entertain arguments against respondents' damages model that bore on the propriety of class certification, simply because those arguments would also be pertinent to the merits determination, the Court of Appeals ran afoul of our precedents requiring precisely that inquiry."); *Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*, 133 S. Ct. 1184, 1195 (2013) ("Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."). Neither side objected to the court taking up the motions in that order.

management pilots during the relevant time frame, complain about three features of ALPA's retro pay calculation: (1) offsetting their retroactive pay by the amount they received from United in annual bonuses; (2) using the average number of pay credit hours flown by the management pilot's bid category, as opposed to their actual hours worked; and (3) excluding certain credit hours from the calculation. Doc. 29 at ¶¶ 33-39; Doc. 96 at 3; Doc. 149-1 at 8. For purposes of their DFR claim, they seek to represent a class of all United pilots who paid union dues and/or contract maintenance fees to ALPA while working as a United management pilot at any time from January 1, 2010 through December 18, 2012 ("Management Pilot DFR Class"). Doc. 29 at ¶ 53. For purposes of their alternative unjust enrichment claim, they seek to represent all United pilots who paid union dues and/or contract maintenance fees to ALPA while working as a United management pilot ("Management Pilot Unjust Enrichment Class"). *Ibid*.

## Discussion

A court's analysis of class certification "is not free-form, but rather has been carefully scripted by the Federal Rules of Civil Procedure." *Chi. Teachers Union, Local No. 1. v. Bd. of Educ. of City of Chi*, 797 F.3d 426, 433 (7th Cir. 2015). To be certified, a proposed class must satisfy the four requirements of Rule 23(a): "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims and defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a); *see Bell v. PNC Bank, Nat'l Ass'n*, __ F.3d __, 2015 WL 5093052, at *9-10 (7th Cir. Aug. 31, 2015). If Rule 23(a) is satisfied, the proposed class must fall within one of the three categories in Rule 23(b), which the Seventh Circuit has described as: "(1) a mandatory class action (either because of the risk of incompatible standards for the party opposing the class

3

or because of the risk that the class adjudication would, as a practical matter, either dispose of the claims of non-parties or substantially impair their interests), (2) an action seeking final injunctive or declaratory relief, or (3) a case in which the common questions predominate and class treatment is superior." *Spano v. Boeing Co.*, 633 F.3d 574, 583 (7th Cir. 2011); *see also Bell*, 2015 WL 5093052, at *10. Plaintiffs argue for certification under all three categories. Doc. 47 at 11-15. Finally, the class must be "identifiable as a class," meaning that the "class definitions must be definite enough that the class can be ascertained." *Oshana v. Coca–Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006) (citing *All. to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir. 1977)); *see also Mullins v. Direct Dig., LLC*, 795 F.3d 654, 659-61 (7th Cir. 2015). "Failure to meet any one of the requirements of Rule 23 precludes certification of a class." *Harriston v. Chi. Tribune Co.*, 992 F.2d 697, 703 (7th Cir. 1993) (internal quotation marks omitted).

The putative class representative bears the burden of showing that each requirement is satisfied. *See Chi. Teachers Union*, 797 F.3d at 433; *Messner v. NorthShore Univ. Healthsystem*, 669 F.3d 802, 811 (7th Cir. 2012); *Retired Chi. Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993). Although "as a general principle, a court is not allowed to engage in analysis of the merits in order to determine whether a class action may be maintained[,] … the boundary between a class determination and the merits may not always be easily discernible," *Retired Chi. Police*, 7 F.3d at 598-99 (internal quotation marks omitted), and "the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Chi. Teachers Union*, 797 F.3d at 435 (quoting *Behrend*, 133 S. Ct. at 1432); *see also Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (noting that class certification analysis "[f]requently ... will entail some overlap with the merits of the

4

plaintiff's underlying claim") (quoting *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 160 (1982)) (internal quotation marks omitted). As the Seventh Circuit has explained, "a district court must make whatever factual and legal inquiries are necessary to ensure that requirements for class certification are satisfied before deciding whether a class should be certified, even if those considerations overlap the merits of the case." *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 815 (7th Cir. 2010) (citing *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001)); *see also Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 889-90 & n.6 (7th Cir. 2011). The Seventh Circuit has instructed district courts to exercise "caution" before certifying a class. *Thorogood v. Sears, Roebuck & Co.*, 547 F.3d 742, 746 (7th Cir. 2008). That caution demands a close look at each of the Rule 23 requirements. The court will discuss each requirement, though not in the order set forth in the Rule. *See Jefferson v. Ingersoll Int'l, Inc.*, 195 F.3d 894, 898 (7th Cir. 1999) ("A court should endeavor to select the most appropriate subsection, not just the first linguistically applicable one in the list.").

**I.     Rule 23(a)**

    **A.     Rule 23(a)(1): Numerosity**

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). A plaintiff need not plead or prove the exact number of class members to establish numerosity under Rule 23(a)(1), *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1987), and the court may make common sense assumptions to determine numerosity. *See Arreola v. Godinez,* 546 F.3d 788, 797 (7th Cir. 2008) (finding numerosity after the plaintiff had identified 14 class members and introduced evidence that "support[ed] a much larger estimate"); *Vergara v. Hampton*, 581 F.2d 1281, 1284 (7th Cir. 1978) ("[D]ifficulty in determining the exact number of class members does not preclude class certification."); William

5

Rubenstein *et al*., *Newberg on Class Actions* §§ 3:13 (5th ed. 2015) ("Generally, a plaintiff must show enough evidence of the class's size to enable the court to make commonsense assumptions regarding the number of putative class members."). Still, "the party supporting the class cannot rely on mere speculation or conclusory allegations as to the size of the putative class ... for numerosity purposes." *Arreola,* 546 F.3d at 797 (internal quotation marks omitted). Although no magic number exists for satisfying the numerosity requirement, the Seventh Circuit has held that "[e]ven if the class were limited to 40 [members] … that is a sufficiently large group to satisfy Rule 23(a) where the individual members of the class are widely scattered and their holdings are generally too small to warrant undertaking individual actions." *Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n.9 (7th Cir. 1969); *see also Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001) ("No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met.").

Plaintiffs contend that the putative management pilot class "comprises in excess of 120 members." Doc. 29 at ¶ 55; *see* Doc. 47 at 7-8; Doc. 64 at 13-15. While not disputing this figure, ALPA argues that Plaintiffs have not "satisf[ied] their burden of proving that the proposed … [class] [is] so numerous that joinder is impractical." Doc. 61 at 14. True enough, even if the size of the proposed class satisfies Rule 23(a)(1), certification may be denied where the class representative fails to "identif[y] a single potential class member" or "provide[] sufficiently detailed testimony … to support the existence of a definitive, identifiable class." *Arreola*, 546 F.3d at 798. Those circumstances do not prevail here, as employment records identify most (if not all) members of the class.

6

### B.     Rule 23(a)(4): Adequacy

The adequacy inquiry "consists of two parts: (1) the adequacy of the named plaintiffs as representatives of the proposed class's myriad members, with their differing and separate interests, and (2) the adequacy of the proposed class counsel." *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011). ALPA contends that Barnes, Clark and Whitehead are not adequate representatives of the management pilot class for the DFR claim. Doc. 61 at 8. A proposed class representative is inadequate if her interests are "antagonistic or conflicting" with those of the other class representatives or the absent class members, *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992), or if she is subject to a defense not applicable to the class as a whole, *see CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 726 (7th Cir. 2011); *Randall v. Rolls–Royce Corp.*, 637 F.3d 818, 824 (7th Cir. 2011); *Hardy v. City Optical Inc.*, 39 F.3d 765, 770 (7th Cir. 1994); *Koos v. First Nat'l Bank of Peoria*, 496 F.2d 1162, 1164-65 (7th Cir. 1974). Likewise, "[a] person whose claim is idiosyncratic or possibly unique is an unsuitable class member." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 758 (7th Cir. 2014).

ALPA contends that because Barnes "worked as a management pilot for only the first eight months" of the relevant time period, "his interests are aligned with the line pilots and antagonistic to management pilots, especially considering that any increase in the management pilot allocation would reduce line pilots' share." Doc. 61 at 7. This contention fails to persuade. Although the management pilots argue that a DFR-compliant retro pay allocation would have resulted in their receiving a greater share and the line pilots receiving a lesser share of the $225 million, victory for the management pilots would result in ALPA paying them the difference between what they were paid and what they should have been paid. *See Int'l Bhd. of Elec. Workers v. Foust*, 442 U.S. 42, 49 (1979) (holding that DFR damages are designed to make the

injured employee whole); *Quinn v. DiGiulian*, 739 F.2d 637, 646 (D.C. Cir. 1984) ("[T]he breach of [the DFR] gives rise to liability for any damages that result."). As ALPA admitted at a hearing on August 19, 2014, because it has held back some of the $225 million in reserve to satisfy any claims arising from legal challenges to the allocation, it would not claw back the amounts already paid to the line pilots if the management pilots prevailed here. It follows that Barnes's service as both a line pilot and a management pilot does not render him an inadequate representative of the management pilot DFR class. *See Abbott v. Lockheed Martin Corp.*, 725 F.3d 803, 814 (7th Cir. 2013) (approving class certification and rejecting a challenge to adequacy where no "investor who benefited from [the defendant's] imprudent management would have her [awarded] assets reduced as a result of this lawsuit").

ALPA's objections to Whitehead and Clark, both of whom worked as management pilots for the entirety of the relevant period, Doc. 61-2 at ¶¶ 10, 12, submit that "their own parochial interests," based on their particular employment histories, are inextricably opposed and would result in conflict over the proper allocation of the $225 million. Doc. 61 at 8. Specifically, Clark, a "senior … manager who received no retro pay, wants senior managers included the retro allocation (with no bonus offset), while Whitehead … actually would be harmed by the inclusion of senior managers and [the] resulting reduction in the junior managers' allocation." *Ibid*. This argument fails to persuade for the same reasons as ALPA's objections to Barnes. It is possible that in the context of clawbacks from those who received too much, conflict over the inclusion of senior managers might make Whitehead's and Clark's interests inextricably opposed, and thus render them inadequate representatives of a common class. As discussed above, however, because victory for management pilots would result in ALPA's disbursement of additional funds to compensate them appropriately, the fact that a subgroup of management pilots may or may not

8

be included does not necessarily harm the other management pilots. *See*, *e.g.*, *Abbott*, 725 F.3d at 813 ("[T]his court has never held … that the mere possibility that a trivial level of intra-class conflict may materialize as the litigation progresses forecloses class certification entirely."); *Johnson v. Meriter Health Servs. Emp. Ret. Plan*, 702 F.3d 364, 372 (7th Cir. 2012) ("It is premature to declare the alleged conflicts of interest an insoluble bar to the class action."); *Kohen v. Pac. Inv. Mgmt. Co.*, 571 F.3d 672, 680 (7th Cir. 2009) (noting that "[a]t this stage in the litigation, the existence of such conflicts is hypothetical," that "[i]f and when they become real, the district court can certify subclasses with separate representations of each," and collecting cases). In any event, if subsequent proceedings reveal that Whitehead and Clark suffer from conflict that renders them inadequate, Barnes could carry on as the sole class representative.

### C. Rule 23(a)(3): Typicality

The Rule 23(a)(3) typicality requirement "directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *Retired Chi. Police*, 7 F.3d at 597. A "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). "[T]ypicality under Rule 23(a)(3) should be determined with reference to the company's actions, not with respect to particularized defenses it might have against certain class members." *CE Design*, 637 F.3d at 725; *see also Danvers Motor Co. v. Ford Motor Co.*, 543 F.3d 141, 150 (3d Cir. 2008) ("Factual differences will not defeat typicality *if* the named plaintiffs' claims arise from the same event or course of conduct that gives rise to the claims of the class members and are based on the same legal theory."); *Rosario*, 963 F.2d at 1018 ("[W]e look to the defendant's conduct and the plaintiff's legal theory

9

to satisfy Rule 23(a)(3)."). ALPA does not directly challenge typicality, and for good reason: like all management pilots, Barnes, Clark, and Whitehead allegedly were deprived of their proper share of the $225 million in retro pay allocated among all United pilots.

### D. Rule 23(a)(2): Commonality

"Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury" and that "[t]heir claims … depend upon a common contention … of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2551 (internal quotation marks omitted); *see also Chi. Teachers Union*, 797 F.3d at 434. "[F]or purposes of Rule 23(a)(2) even a single common question will do." *Dukes*, 131 S. Ct. at 2556 (internal quotation marks and alterations omitted). "Rule 23(a)(2) does not demand that every member of the class have an identical claim," and some degree of factual variation will not defeat commonality provided that common questions yielding common answers can be identified. *Spano*, 633 F.3d at 585; *see also Rosario*, 963 F.2d at 1017-18. "In this context, class-wide resolution means that determining the truth or falsity of the common contention will resolve an issue that is central to the validity of each claim." *Chi. Teachers Union*, 797 F.3d at 434.

The commonality requirement is easily satisfied here. Each putative class member's claim presents a common question: whether ALPA breached its DFR to management pilots in allocating the retro pay, or, in the alternative, whether ALPA unjustly enriched itself by accepting dues and contract maintenance fees from management pilots even though it did not represent them. Doc. 29 at ¶¶ 66-75. By contrast to the circumstances presented in *Dukes*, the putative class members here were not affected by individual decisions made by different

10

decisionmakers. Instead, as to the DFR claim, each putative class member's claim arises from a single decision, ALPA's retro pay allocation, and the answer to the question whether ALPA violated its DFR will be the same for all putative class members. *See Berger v. Xerox Corp. Ret. Inc. Guarantee Plan*, 338 F.3d 755, 763 (7th Cir. 2003) ("What is sought is a declaration that Xerox's method of computing the lump sums to which withdrawing employees are entitled is unlawful. That is a ground common to all members of the class."). As to the alternative unjust enrichment claim, each putative class member's claim arises from a single decision, ALPA's decision to accept dues and contract maintenance fees from pilots whom it did not represent, and the answer to the question whether ALPA unjustly enriched itself will be the same for all putative class members. *See Chi. Teachers Union*, 797 F.3d at 440 ("The plaintiffs have demonstrated commonality by asserting that a uniform employment practice … used by the same decision-making body … was discriminatory.").

ALPA retorts that any claim related to its representation (or lack thereof) of the management pilots necessarily raises the question whether the pilot relied on ALPA's alleged representation, and that "[a]nswering the question whether management pilots relied on or were led to believe by ALPA that it was presenting them depends on an individualized inquiry into each management pilot's experience." Doc. 61 at 10. As an initial matter, the presence of an individual question does not defeat the existence of a common question. *See Suchanek*, 764 F.3d at 759 (holding that "a supposed rule that individual issues necessarily predominate in cases requiring individual subjective inquiries into causality … was an error of law") (internal quotation marks omitted); *Pella Corp. v. Saltzman*, 606 F.3d 391 393 (7th Cir. 2010) (holding that "[t]he district court reasonably determined that the individual issues that necessarily arise in a consumer fraud action would not prevent class treatment of the narrow liability issues" at issue

in the case). In any event, ALPA's premise—that each putative class member must individually prove reliance to demonstrate that ALPA represented her—is incorrect. "[C]ollective bargaining is collective rather than individual." *C.P. Lesh Paper Co.*, 187 N.L.R.B. No. 142, at *1 n.2 (1970). If ALPA had an RLA-imposed duty to represent the management pilots as a class, individual reliance on ALPA's representations would not be necessary to allege a breach of the DFR. *See Suchanek*, 764 F.3d at 759 ("Every consumer fraud case involves individual elements of reliance or causation. … [A] rule requiring 100% commonality would eviscerate consumer-fraud class actions."); *Pella Corp. v. Saltzman*, 606 F.3d at 393 ("Proximate cause … is necessarily an individual issue and the need for individual proof alone does not necessarily preclude class certification.").

Even assuming that individual reliance must be proved for each class member, and (skipping ahead for a moment to Rule 23(b)(3)) even assuming that the reliance issue would threaten to predominate, the court may certify a class under Rule 23(c)(4) to deal solely with whether the allocation violated ALPA's DFR to the management pilots. *See Chi. Teachers Union*, 797 F.3d at 445 ("Rule 23(c)(4) permits the court to certify particular issues for resolution as a class action."); *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 800 (7th Cir. 2013); *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith*, 672 F.3d 482, 491 (7th Cir. 2012); *Kartman*, 634 F.3d 883, 895 (7th Cir. 2011). The propriety of ALPA's allocation of retro pay "present[s] a[n] … issue[] that can most efficiently be determined on a class-wide basis, consistent with" Rule 23(c)(4). *McReynolds*, 672 F.3d at 491.

## II. Rule 23(b)(3)

Although Plaintiffs contend that the putative class satisfies all three Rule 23(b) categories, Doc. 47 at 11-15, it is necessary to discuss only Rule 23(b)(3), the most appropriate

category for the claims in this case. *See Jefferson*, 195 F.3d at 898 ("When substantial damages have been sought, the most appropriate approach is that of Rule 23(b)(3)."). A proposed class satisfies Rule 23(b)(3) if "the questions of law or fact common to class members predominate over any questions affecting only individual members, and … a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Factors pertinent to predominance and superiority include: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *Ibid*.

### A.  Predominance

"Analysis of predominance under Rule 23(b)(3) begins … with the elements of the underlying cause of action." *Messner*, 669 F.3d at 815 (quoting *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011)) (internal quotation marks omitted). "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623. As the Supreme Court has explained:

> To gain class-action certification under Rule 23(b)(3), the named plaintiff must demonstrate, and the District Court must find, that the questions of law or fact common to class members predominate over any questions affecting only individual members. This predominance requirement is meant to test whether proposed classes are sufficiently cohesive to warrant adjudication by representation, but it scarcely demands commonality as to all questions. In particular, when adjudication of questions of liability common to the class will achieve economies of time and expense, the predominance standard is generally satisfied even if damages are not provable in the aggregate.

*Behrend*, 133 S. Ct. at 1436-37 (alterations, citations, and internal quotation marks omitted).

While similar to the Rule 23(a)(2) commonality requirement, the predominance requirement is "far more demanding." *Amchem Prods.*, 521 U.S. at 624. Predominance is not satisfied where liability determinations are individual and fact-intensive, *see Kartman*, 634 F.3d at 891, and "[m]ere assertion by class counsel that common issues predominate[] is not enough," *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014) (alterations omitted). Predominance also fails where "affirmative defenses will require a person by person evaluation of conduct to determine whether [a defense] precludes individual recovery." *Clark v. Experian Info., Inc.*, 233 F.R.D. 508, 512 (N.D. Ill. 2005), *aff'd*, 256 F. App'x 818 (7th Cir. 2007); *see also Myers v. Hertz Corp.*, 624 F.3d 537, 551 (2d Cir. 2010) ("[W]hile it is well established that the existence of a defense potentially implicating different class members differently does not necessarily defeat class certification, it is equally well established that courts must consider potential defenses in assessing the predominance requirement.") (alterations and internal citations omitted).

Predominance is satisfied here. As noted above in discussing commonality, the most significant issues in this case—whether ALPA breached its DFR the management pilots in its discretionary allocation of retro pay, or, in the alternative, whether ALPA's collection of dues and maintenance fees from management pilots constituted unjust enrichment—can be resolved on a classwide basis, without any individual variation. *See Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998). Most of ALPA's arguments against predominance mirror its arguments against commonality, Doc. 61 at 11-13, which are without merit for the reasons set forth above. ALPA's two other arguments against predominance also lack merit.

ALPA first contends that an "individualized, fact-specific inquiry" is necessary because the putative class member worked for different lengths of time as management pilots during the

relevant period. Doc. 61 at 12. But if ALPA ultimately is found to have violated the DFR, the need to calculate damages for each putative class member under a DFR-compliant allocation does not defeat predominance. *See Butler*, 727 F.3d at 801 ("It would drive a stake through the heart of the class action device, in cases in which damages were sought rather than an injunction or a declaratory judgment, to require that every member of the class have identical damages."); *Messner*, 669 F.3d at 819 ("[R]equir[ing] not only common evidence and methodology, but also common results for members of the class … would come very close to requiring common proof of damages for class members, which is not required."); *Keele*, 149 F.3d at 593 ("The damages recoverable for the class members' injuries may differ … but the fact remains that their injuries are the same."). Indeed, "[i]t is routine in class actions to have a final phase in which individualized proof must be submitted." *Chi. Teachers Union*, 797 F.3d at 442 (internal quotation marks omitted). Because "the [named] plaintiffs' claims and those of the class they would like to represent all derive from a single course of conduct by [the defendant]," *Suchanek*, 764 F.3d at 756, and because "adjudication of questions of liability … will achieve economies of time and expense," *Chi. Teachers Union*, 797 F.3d at 444, predominance is satisfied.

Second, ALPA contends that "courts routinely find that unjust enrichment claims do not satisfy the predominance requirement." Doc. 61 at 12. But the denial of certification of some unjust enrichment claims does not mean that the claim in this case fails predominance. *See O'Conner v. Commonwealth Edison Co.*, 807 F. Supp. 1376, 1391 (C.D. Ill. 1992) (describing "the logical fallacy known as the Converse Accident (hasty generalization) … when a person erroneously creates a general rule from observing too few cases"). The central question presented by that claim, whether ALPA unjustly enriched itself by accepting dues and fees from

the management pilots if it turns out that ALPA was not in fact representing them, easily predominates over any conceivably individual issue pertinent to that claim.

B.  **Superiority**

The four Rule 23(b)(3) factors all support a finding of superiority. First, "the class members' interests in individually controlling the prosecution or defense of separate actions," Fed. R. Civ. P. 23(b)(3)(A), is minimal, as no management pilots have brought individual suits. Doc. 64 at 12. Second, because no other cases involving the management pilots' retro pay share has been brought to the court's attention, "the extent and nature of any litigation concerning the controversy already begun by or against class members" is not a factor. Fed. R. Civ. P. 23(b)(3)(B). Third, "the desirability or undesirability of concentrating the litigation of the claims in the particular forum" favors predominance, Fed. R. Civ. P. 23(b)(3)(C), as questions regarding the allocation formula should be decided only once, lest inconsistent results arise, and the Northern District of Illinois is as appropriate a forum as any given that ALPA "resides, maintains offices, and does business in the district" and that "a substantial part of the events giving rise to Plaintiffs' claims arose in this district," Doc. 29 at ¶ 11. Fourth, "the likely difficulties in managing a class action" in this case are minimal given the predominance of common issues, the readily available identity of all class members, and the relative ease of administering the claims process. Fed. R. Civ. P. 23(b)(3)(D). Finally, "as part of a careful application of Rule 23(b)(3)'s superiority standard, [the court] must recognize both the costs *and benefits* of the class device." *Mullins*, 795 F.3d at 663. Parallel litigation for each class member here would entail the same discovery and require multiple courts to weigh the same factual and legal bases for recovery. That would make no sense.

ALPA submits that the possible individual recoveries in this case are so large that the policy motivating class actions, which "is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights," *Amchem Prods.*, 521 U.S. at 617, would not be advanced by certification. Doc. 61 at 13-14. The relatively substantial recovery awaiting many of the management pilots, standing alone, does not defeat superiority. Indeed, "the text of Rule 23(b)(3) does not exclude from certification cases in which individual damages run high." *Amchem Prods.*, 521 U.S. at 617. The case where the Seventh Circuit reversed class certification due in part to the substantial individual awards for class members, *In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293 (7th Cir. 1995), is inapposite. *Rhone-Poulenc* involved a mass tort in which persons with hemophilia sought class certification in an action against manufacturers of blood solids, use of which, the plaintiffs claimed, had infected them with HIV. *Id*. at 1294. The resultant multimillion dollar suits threatened to send "a major segment of the international pharmaceutical industry … into Chapter 11." *Id*. at 1300. As the Seventh Circuit noted, one of its primary concerns with consolidating multiple claims was "forcing the[] defendants to stake their companies on the outcome of a single jury trial, or be forced by fear of the risk of bankruptcy to settle even if they have no legal liability." *Id*. at 1299. ALPA faces no such existential threat here. The lesson of *Rhone-Poulenc*, as the Seventh Circuit later emphasized, is that "only a decentralized process of multiple trials, involving different juries, and different standards of liability, in different jurisdictions" will yield the information needed for accurate evaluation of mass tort claims." *In re Bridgestone/Firestone, Inc. Tire Prods. Liability Litig.*, 288 F.3d 1012, 1020 (7th Cir. 2002) (quoting *Rhone-Poulenc*, 51 F.3d at 1299) (citation and internal quotation marks omitted). That lesson does not pertain here.

### III. Definitiveness and Ascertainability

As noted above, a class definition "must be definite enough that the class can be ascertained." *Oshana*, 472 F.3d at 513; *see also Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 495-97 (7th Cir. 2012); 7A Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 1760 (3d ed. 2005) ("[T]he requirement that there be a class will not be deemed satisfied unless the class description is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member."). "Class definitions have failed this requirement when they were too vague or subjective, or when class membership was defined in terms of success on the merits (so-called "fail-safe" classes)." *Mullins*, 795 F.3d at 657. ALPA does not challenge ascertainability, and indeed it could not, because class membership is as objective as it comes: all United pilots who, during any part of the period from January 1, 2010 through December 18, 2012, paid union dues and/or contract maintenance fees to ALPA while working as a United management pilot, or, in the alternative, all United pilots who paid union dues and/or contract maintenance fees to ALPA while working as a United management pilot. Doc. 29 at ¶ 53. Given the Seventh Circuit's disavowal of the heightened ascertainability requirement adopted by some other circuits, *see Mullins*, 795 F.3d at 658, the alternative classes here are easily ascertainable.

### Conclusion

For the foregoing reasons, the court certifies alternative management pilot classes to pursue the DFR and unjust enrichment claims against ALPA. "An order that certifies a class action must define the class and the class claims, issues, or defenses, and must appoint class counsel under Rule 23(g)." Fed. R. Civ. P. 23(c)(1)(B); *see Chapman v. First Index, Inc.*, 796

18

F.3d 783, 785 (7th Cir. 2015) ("[T]he obligation to define the class falls on the [district] judge's shoulders under" Rule 23(c)(1)(B).).

The class with regard to the DFR claim ("Management Pilot DFR Class") is defined as follows: "All United pilots who, during any part of the period from January 1, 2010 through December 18, 2012, paid union dues and/or contract maintenance fees to ALPA while working as a United management pilot." The claim to be tried is whether ALPA breached its DFR to the Management Pilots in its allocation of the $225 million of retro pay provided by United after ALPA and United entered into the 2012 United Pilot Agreement. The subsidiary issues are: (1) whether ALPA owed a DFR to the Management Pilots in its allocation of the retro pay; and, if so, (2) whether ALPA's allocation of the retro pay was arbitrary and/or discriminatory. The class with regard to the alternative unjust enrichment claim ("Management Pilot Unjust Enrichment Class") is defined as follows: "All United pilots who paid union dues and/or contract maintenance fees to ALPA while working as a United management pilot." The claim to be tried is, assuming that ALPA did not owe a DFR to the Unjust Enrichment Class, whether ALPA unjustly enriched itself in receiving dues and maintenance fees from those pilots. Barnes, Clark, and Whitehead are appointed as class representatives. Pursuant to Rule 23(g), Myron M. Cherry and Jackie C. Volna of Myron M. Cherry & Associates, LLC, are appointed as class counsel.

The parties shall confer regarding class notice and shall file a status report with their joint proposal or competing proposals by October 14, 2015.

September 30, 2015

United States District Judge